IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SIMONE WILSON | ) | |
| | ) | |
| *Plaintiff*, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| METLIFE GROUP INC. | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| *Defendant*. | ) | |

# COMPLAINT

COMES NOW Plaintiff Simone Wilson and files this Complaint for Damages against Defendant MetLife Group Inc. ("MetLife" or Defendant) and respectfully shows the Court as follows:

## JURISDICTION

1.

1. This is an action for legal and equitable relief to redress unlawful discrimination on the basis of gender and retaliation arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII"), the Lilly Ledbetter Fair Pay Act of 2009; and the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) (hereinafter "EPA"),

1

which provide relief for discrimination in employment on the basis of sex. Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs. The claims herein present federal questions thus jurisdiction is proper before this Court pursuant to 28 U.S.C. § 1331. Plaintiff further invokes pendant jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under the laws of the State of Georgia.

## VENUE

2. Venue is proper pursuant to, inter alia, 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3). Moreover, the unlawful employment practices alleged below were committed within the geographic boundaries of the Atlanta Division, Northern District of the United States District Court, within the State of Georgia.

3. Defendant operates within the geographic boundaries of the United States District Court for the Northern District of Georgia.

4. This Court has personal jurisdiction over Defendant as it operates within the geographic boundaries of this Court and its registered agent is located within the geographic boundaries of this Court.

## PARTIES

5.  Plaintiff is a resident and citizen of the State of Georgia.

6.  Plaintiff is female.

7.  Defendant is a domestic limited liability company and registered to conduct business in the State of Georgia.

8.  This Court has personal jurisdiction over Defendant.

9.  Defendant may be served through its Registered Agent as follows:

> C T Corporation System
> 289 S Culver Street
> Lawrenceville, Georgia 30046-4805

if formal service of process is not waived.

## FACTS

10.  Defendant employed fifteen or more employees for each working day in each of twenty or more calendar weeks in 2017 through 2018.

11.  Defendant is subject to the anti-discrimination provisions of Title VII and the EPA.

12.  Defendant is a global insurance and benefits company.

13.  Plaintiff was hired by Defendant on or about September 8, 2008 in the pensions close out department.

14.  A. Chris Turner, male, ("Comparator Turner") upon information and belief began at MetLife in 2012.

15. Comparator Turner is a male comparator, but there may be other male comparators.

16. Both Plaintiff and Comparator Turner have a bachelor's degree from college.

17. On or about September 16, 2013 Plaintiff was promoted to a business Procedures Consultant.

18. On or about 2014 Comparator Turner was promoted to team lead.

19. On or about July 1, 2015 both Plaintiff and Comparator Turner were promoted to "Supervisor" in the Structured Settlements Team ("SST") wherein they were to supervise 8-9 employees.

20. At the time of promotion, Plaintiff had been with MetLife for 7 years, and Comparator Turner had been with MetLife for approximately 3 years.

21. This was the first Supervisor position at MetLife for both Plaintiff and Comparator Turner.

22. Both Plaintiff and Comparator Turner were managed and had their salary determined by Director Timothy Gibbons ("Gibbons").

23. When Plaintiff started as a Supervisor, she was paid a salary of $57,000.

24. When Comparator Turner started as a Supervisor, he was given a raise from $61,200 to $64,000.

25. During her time as a Supervisor, Plaintiff noticed that Comparator Turner was favored by her managers.

26. For example, Comparator Turner was given praise and high ratings for subjective things like doing the "actual work" or "having taken ownership" of an issue, whatever that means, while Plaintiff was criticized for being too focused on "performance metrics". These "performance metrics" were the metrics that MetLife told her and Comparator Turner would be the measure of their performance as Supervisors.

27. When Plaintiff asked specifically, what Comparator Turner was doing that constituted taking "ownership" of an issue or "doing the actual work" so that she could improve, she was told that she was too "competitive," and that she should not focus on what he is doing, but worry about herself.

28. Plaintiff made complaints of gender discrimination to MetLife's HR department, and to Gibbons.

29. Shortly after her complaints, Plaintiff began to be loaned out to other departments and her work on the SST began to be assumed by Comparator Turner.

30. On or around February 2018, Comparator Turner was promoted to a manager's position.

31. Despite Plaintiff's seniority and high performance, she was not told about the position, nor did she see it posted.

32. Plaintiff was not interviewed for the position Comparator Turner received.

33. Plaintiff again made complaints of gender discrimination.

34. In response, Plaintiff was told that she was having performance problems. This was the first time Plaintiff had received negative performance feedback.

35. On or around March 2, 2018 Plaintiff was inadvertently provided with compensation statements for herself (Ex. 1-A) and Comparator Turner (Ex. 1-B).

36. These compensation statements show that, although both Plaintiff and Comparator Turner held the same positions in 2017, Comparator Turner was paid $88,000 in base salary in 2017 and Plaintiff was paid $66,800 in base salary. (See Ex. 1-A & 1-B to Plaintiff's EEOC Charge attached hereto and incorporated herein).

37. Comparator Turner was also paid a higher bonus in 2017.

38. Comparator Turner was paid $98,570 in total compensation for 2017. (See Ex. 1-B).

39. Plaintiff was paid $74,446 in total compensation for 2017. (See Ex. 1-A).

40. MetLife paid Comparator Turner in excess of $20,000 more than they paid Plaintiff in 2017.

41. Upon seeing this pay disparity, Plaintiff became distraught, and unable to work.

42. Plaintiff attempted to follow up with Defendant regarding her complaints of discrimination, but she was put off.

43. Plaintiff specifically spoke with Defendant's HR representative, Debbie Colasanti, and discussed the pay disparity she had seen between herself and Comparator Turner.

44. Specifically, Ms. Colasanti said that Comparator Turner was paid similarly to Plaintiff in 2017.

45. Ms. Colasanti specifically said that Comparator Turner was not paid $20,000 more than her in 2017.

46. Ms. Colasanti's statements to Plaintiff regarding the pay disparity between Plaintiff and Comparator Turner were untrue.

47. Plaintiff pointed out that this was not what his compensation statement said, and Defendant again claimed that MetLife's statement was either wrong or Plaintiff was misinterpreting the statement.

48. On or around March 23, 2018, Plaintiff felt she had no choice but to resign/be constructively discharged.

49. On her last day, April 5, 2018, Plaintiff made a formal written complaint of gender discrimination. (Ex. 1-C). In this email she asked why Comparator Turner was paid more in 2017 and why he was promoted over her in 2018. (See Ex. 1-C)

50. MetLife did not respond to Plaintiff's April 5, 2018 email.

51. On May 1, 2018 Plaintiff followed up with MetLife (Ex. 1-D).

52. On June 8, 2018 Plaintiff filed an EEOC Charge (Ex. 1)

53. On July 5, 2020 the EEOC issued Plaintiff her Right to Sue letter ("RTS letter") (See Ex. 2).

54. This lawsuit has been commenced within 90 days of her receipt of the RTS letter from the EEOC.

### COUNT I – VIOLATION OF TITLE VII: GENDER DISCRIMINATION – DISPARATE IMPACT AND/OR DISPARATE TREATMENT

55. Plaintiff incorporates paragraphs 1-54 above, as if fully set forth herein.

56. Defendant has discriminated against Plaintiff because of her gender, female, in the terms of wages/compensation and other terms, conditions and privileges of her employment.

8

57. Defendant has engaged in and continue to engage in a pattern and practice of discriminating against their female employees, including Plaintiff, with respect to wages/compensation and other terms and conditions and privileges of their employment.

58. The selection and pay procedures of Defendant had, and continue to have, a disparate impact on female employees, including Plaintiff.

59. Job positions with higher rates of commission and pay were given to male employees over Plaintiff.

60. Female employees, including Plaintiff, are offered substantially different compensation packages than those offered to male employees for the same, or substantially same, positions that require doing equal work.

61. Lesser-qualified males, or those lacking Plaintiff's seniority, were given both higher base salaries and bonus than Plaintiff.

62. Comparator Turner was also given higher reviews and a raise due to his gender.

63. Plaintiff was denied higher paying positions because of her sex.

64. The criteria used by Defendant to make selection decisions for employee compensation are discriminatory.

65. Plaintiff has been, and continues to be, directly affected by the discriminatory practices described including being denied equal pay for equal

work and being denied the opportunity to work in an environment free from sexual discrimination.

66. The sex discrimination set forth herein also further adversely affected Plaintiff and other female employees by promoting and reinforcing sexual stereotypes and sexual bias in the workplace.

67. Plaintiff has been subjected to systemic sexual discrimination including, but not limited to, a pattern and practice of intentional discrimination and practices that have an unlawful disparate impact on her employment opportunities. Such sexual discrimination includes a policy and practice of restricting female employment opportunities to lower classifications and compensation levels. The means of accomplishing such sex discrimination includes, but is not limited to, Defendant Employer's promotion selection and compensation procedures, sexually discriminatory working conditions, and unequal terms and conditions of employment.

68. Defendant Employer's selection and compensation procedures incorporate the following sexually discriminatory practices: 1) reliance upon subjective procedures and criteria which permit and encourage the incorporation of sexual stereotypes and bias against female employees; 2) refusal to establish policies, procedures, or criteria that reduce or eliminate disparate impact and/or intentional sexual bias or stereotypes in Defendant

Employer's decision making process for compensation and promotion; 3) refusal to place women on appropriate salary schedules; 4) refusal to compensate women at the same level as male employees; and, 5) paying women less than male employees for the same or substantially same work.

69. Defendant Employer's compensation and selection procedures have had a disparate impact on Plaintiff. Such procedures are not valid, job related or justified by business necessity. There are objective and structured compensation and selection procedures available to Defendant Employer, which would have a less disparate impact on females and equal or greater validity and job relatedness, but Defendant has refused to consider and/or to use such procedures.

70. Defendant Employer's compensation and selection procedures were implemented with the intent of having a disparate impact on Plaintiff and other female employees.

71. Defendant Employer's compensation and selection procedures have adversely affected Plaintiff and other female employees, including but not limited to, the following ways: assigning females to inferior pay rates, and other unequal terms and conditions of employment in favor of male employees; and encouraging or ratifying sexually discriminatory conditions

of work and sexually demeaning stereotypes regarding the capabilities, motivation and interests of females.

72.     Defendant engaged centralized control over the compensation of Plaintiff and other female employees.

73.     Defendant have continuously engaged in, condoned and ratified discriminatory practices to constitute a continuing violation of Title VII.

74.     Plaintiff has no plain, adequate, or complete remedy of law to redress the wrongs alleged herein, and this suit for back-pay, an injunction, other equitable relief, and a declaratory judgment is her only means of securing adequate equitable relief.

75.     Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant Employer's unlawful practices as set forth herein unless enjoined by this Court.

76.     Because of Defendant Employer's discriminatory employment practices, Plaintiff has experienced harm, including loss of compensation, back and front pay, and other employment benefits.

### COUNT II: VIOLATION OF TITLE VII: RETALIATION

77.     Plaintiff incorporates paragraphs 1-76 above, as if fully set forth herein.

78.     Plaintiff engaged in protected activity under Title VII by making complaints of gender discrimination and disparate treatment to Defendant.

79. After Plaintiff's complaints of gender discrimination and disparate treatment, Plaintiff was retaliated against and subject to adverse employment actions, including receiving lower ratings, being passed over for promotion, bonus, etc.

80. The true reason for the retaliatory acts described above was to retaliate against her for making complaints of gender discrimination and disparate treatment.

81. As a direct and proximate result of the above-mentioned discriminatory conduct, Plaintiff suffered lost wages and benefits, diminished employment opportunities and emotional distress, for which Defendant is liable.

### COUNT III & IV: VIOLATION OF THE LILLY LEDBETTER FAIR PAY ACT OF 2009 AND THE EQUAL PAY ACT

82. Plaintiff incorporates paragraphs 1-81 above, as if fully set forth herein.

83. Defendant violated Plaintiff's rights under the Equal Pay Act when they deprived her of pay equivalent to those of males performing the same duties as Plaintiff.

84. Defendant received notice of the above alleged wage inequities directly from Plaintiff.

85. All Defendant Employer's actions were executed intentionally, willfully, knowingly and with malice and recklessness. Moreover, Defendant

Employer, acted with deliberate indifference to the known or apparent consequences of its actions.

86. Plaintiff has suffered actual injuries and damages as a direct and proximate result of the above-described violations including but not limited to back pay, front pay, and compensatory damages due to the daily emotional distress suffered at her work and the effect of that distress on her health and personal life. Moreover, Plaintiff is entitled to collect liquidated damages against Defendant Employer under the Equal Pay Act for the pay disparities equal to the full amount of back pay owed. And, because the denial of equal pay was willful, Plaintiff is entitled to recover for three years of back pay as well.

87. As a direct and proximate result of the Defendant Employer's sex-based discrimination, Plaintiff suffered lost wages and benefits, bonuses, significantly diminished employment opportunities and emotional distress.

**WHEREFORE**, Plaintiff prays as follows:

(a)  that Summons issue;

(b)  that Defendant be served with Summons and Complaint;

(c)  that trial by jury of all issues be had;

(d)  that judgment be issued against Defendant for any and all general, special and where applicable, punitive damages as allowed by law

under each and every count and cause of action contained in the Complaint;

(e) for injunctive relief;

(f) for all costs of this action to be taxed against Defendant;

(g) for all costs and attorney's fees to be awarded to Plaintiff; and,

(h) for any and all other further relief as this Court may deem just and equitable under the circumstances.

Respectfully submitted, this 2nd day of October, 2020.

>*/s/ J. Stephen Mixon*
>J. Stephen Mixon
>Georgia Bar No. 514050
>steve@mixon-law.com
>Attorneys for Plaintiff

THE MIXON LAW FIRM
1691 Phoenix Boulevard, Ste. 150
Atlanta, Georgia 30349
T: 770-955-0100
F: 678-999-5039